

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Norman L. Fountian<br>3655 Miller Paul Road<br>Galena, Oh 43021,<br><br>and<br><br>Others similarly situated,<br><br>     Plaintiffs.<br><br>vs<br><br>Firefly Agency LLC<br>655 Metro Place South, Suite 330<br>Dublin, Ohio 43017,<br><br>and<br><br>Fritz Griffioen<br>25702 Wood Creek Rd.<br>Perrysburg, OH 43551,<br><br>and<br><br>William Griffioen<br>755 Oxborough Dr.<br>Perrysburg, OH 43551,<br><br>and<br><br>Rodney Mayhill<br>5266 Sky Trail Drive<br>Hilliard, Ohio 43026,<br><br>and<br><br>James R. Carnes, Esq.<br>1000 Jackson Street<br>Toledo, OH 43604<br><br>     Defendants, | Case Number:<br><br>2 19 C V 3 0 0 4<br><br><br>Judge:   Judge Marbley<br><br>**MAGISTRATE JUDGE DEAVERS**<br><br><br><br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

Now comes Norman L. Fountain, Pro Se on behalf of Plaintiff Norman L. Fountain ("Mr. Fountain") with this civil complaint against Defendants Firefly Agency, LLC ("Firefly"), Fritz Griffioen, Bill Griffioen, Rod Mayhill and James Carnes, Esq.

This complaint is signed by Plaintiff Mr. Fountain in accordance with the Federal Rules of Civil Procedure to Rule 11.

Service upon all parties will be perfected as is specified on the Certificate of service as the end of this complaint.

Respectfully Submitted,

/s/ Norman L. Fountain

Norman L. Fountian, *Pro Se*
3655 Miller Paul Road
Galena, Oh 43021
Phone: (614) 561-3922
Fax: (740) 965-4437
E-mail: IHTDemand@gmail.com

## CIVIL COMPLAINT

### I. The parties to this complaint

#### A. The Plaintiffs

1. Plaintiff Norman L. Fountain is an individual, State of Ohio resident and currently resides in Delaware County.

2. Plaintiff Norman L. Fountain is the original Founder and past President of Firefly Agency, LLC, formerly known as IHT Insurance Agency Group and formerly known as 1st Buckeye Insurance Agency Group, LLC hereinafter referred to as "Firefly".

3. Others similarly situated who may join this complaint could be individuals or companies located in any of the 26 states in which Defendant Firefly Agency presently conducts business.

#### B. The Defendants

4. Defendant Firefly Agency, LLC ("Firefly") is organized under the laws of the State of Ohio, with entity number 4146038 and agent/registrant of Rod Mayhill located at 655 Metro Place South, Suite 330, Dublin, Ohio 43017.

5. Defendant Rod Mayhill is an Ohio Resident and currently resides in Franklin County.

6. Upon belief, Rod Mayhill is the current President of Firefly and serves on the Board of Managers of Firefly.

7. Defendant Fritz Griffioen is an Ohio Resident and currently resides in Wood County.

8. Upon belief, Fritz Griffioen currently holds a management position at Firefly and serves on the Board of Managers of Firefly.

9. Defendant Bill Griffioen is an Ohio Resident and currently resides in Wood County.

10. Upon belief, Bill Griffioen currently holds a management position at Firefly and serves on the Board of Managers of Firefly.

11. Defendant James Carnes, Esq. is an Ohio Resident and upon belief currently resides in Wood

County.

12. Upon belief, Defendant James Carnes is the personal attorney for Defendants Fritz Griffioen, Bill Griffioen and The Griffioen Agency and is now the corporate attorney for Defendant Firefly.

## II. Basis for jurisdiction

13. Jurisdiction is federal pursuant to 28 U.S.C. §1331 as this case arises under federal laws.

14. This complaint includes, but is not limited to allegations against the Defendants for;

    a. Anti-trust violations 15 U.S.C. §§ 1-38, Sherman Act 15 U.S.C. §§ 1-7, The Clayton Act 15 U.S.C. § 12-27 and Federal Communications Act,

    b. Embezzlement of at least $8M of commission fees,

    c. Mail Fraud and Wire Fraud 18 U.S.C. §§1341, 1343 & 1346; by use of USPS and electronic communications for intentionally overbilling clients and underpaying suppliers,

    d. Title VII violations including the "Fair Housing Act". Sec. 801. [42 U.S.C. § 3601],

    e. Misprision of multiple felonies including anti-trust felonies 18 U.S.C. § 4 (1976),

    f. Subordination of Perjury by legal counsel 18 U.S.C. § 1622,

    g. Obstruction, Coverup, concealment and avoidance of restitution and,

    h. Retaliation, Witness intimidation and Harassment in violation of whistleblower laws.

## III. Statement of Claim

## A. The case centers around White Collar Crime harming thousands of customers and agents / agencies / suppliers in multiple states including but not limited to:

15. Anti-Trust violations, insurance redlining, illegal customer steering and discrimination including, but not limited to, an established restrictive underwriting practice entitled "The Affluent Middle-Class Rule"

16. Systemic Systematic Embezzlement of at least $8M of commission fees belonging to agents / agencies, intentionally and wrongfully and knowingly paid out as owner distributions.

17. Mail Fraud 18 U.S.C. § 1341 and Wire Fraud 18 U.S.C. § 1343, with thousands of documented, provable counts of overbilling clients and underpayments to suppliers.

18. Ensuing coverup, concealment and avoidance of restitution resulting in additional federal crimes, including 18 U.S.C. § 4 (1976) Misprision of a Felony and Subordination of Perjury by legal counsel.

**A. Plaintiff Norman L. Fountain**

19. As the former president and original founder of Defendant 1st Buckeye Insurance Agency Group, LLC, subsequently named IHT Insurance Agency Group, LLC and recently changed to Firefly Agency, LLC ("Firefly"), Plaintiff Norman L. Fountain ("Mr. Fountain") possesses firsthand knowledge of the unlawful activities ongoing at Defendant Firefly.

20. Plaintiff Mr. Fountain started the Defendant Firefly's business in 1997.

21. Plaintiff Mr. Fountain served as President of Defendant Firefly from its inception in 2005 through 2012 and was forced into retirement in September of 2013.

22. Plaintiff was a supplier/agency with Firefly from 2005 to until November 24, 2015, when Defendant Firefly terminated all carrier access in retaliation for requesting payment on the unpaid commission accounts that belonged to the Plaintiff.

23. Subsequent review of records by Plaintiff uncovered thousands of additional unpaid commission accounts and hundreds of additional victims.

24. Documents also revealed the concert of effort by Defendants Firefly, Fritz Griffioen, Bill Griffioen and Rod Mayhill to boycott entire communities from access to their products and services by enforcing their "The Affluent Middle-Class Rule".

25. Plaintiff Mr. Fountain is currently a collaborating whistleblower and cooperating informant with the Federal Bureau of Investigation ("FBI") and the Department of Justice ("DOJ") Securities and Exchange Commission Anti-trust Division in Washington D. C.

26. Plaintiff Mr. Fountain has suffered financial harm and professional harm by and through the actions of Defendants Firefly, Fritz Griffioen, Bill Griffioen and Rod Mayhill.

27. In addition, Plaintiff Mr. Fountain has endured retaliation, witness intimidation and harassment facilitated by Defendant James Carnes, Esq.

**B. Defendants Firefly, Fritz Griffioen, Bill Griffioen and Rod Mayhill**

28. Defendant Firefly is an aggregator, who sells insurance carrier access to hundreds of independent supplier/agencies located in 26 states.

29. Firefly charges the supplier/agency a monthly fee for the access to the insurance carrier.

30. When commissions are paid to Firefly for the customers' insurance written by the supplier/agency, Firefly keeps a part of that commission and pays a part to the supplier/agent.

31. This is referred to as the commission split and varies depending on the agreement.

32. The insurance agent, acting as the supplier, must abide by the rules of Firefly in order to continue to maintain the access to insurance carrier products.

33. Firefly's management, business practices and rules for product distribution and accessibility are enforced by their Board of Managers ("Board").

34. At all times relevant to this case the board consisted of Defendants Fritz Griffioen, Bill Griffioen and Rodney Mayhill.

35. Firefly operations involve interstate commerce pursuant to 18 USCS § 921 and are in part regulated by the federal government as authorized under Article I of the U.S. Constitution.

**C (1). Anti-trust violations, Sherman & Clayton Act, Illegal Steering, Civil Rights and Fair Housing**

36. As a supplier/agency under Firefly, Plaintiff Mr. Fountain and his agency serviced communities in multiple states including Indiana, Illinois, Kentucky and Michigan.

37. Defendants Firefly, Fritz Griffioen, Bill Griffioen and Rod Mayhill inflicted overt discrimination and disparate treatment upon employees, suppliers and customers, including the Plaintiff Mr. Fountain and his agency.

38. Defendants instituted their "Affluent Middle Class" rules and forced them upon the

supplier/agencies throughout multiple states, including Plaintiff Mr. Fountain and his agency.

39. Defendants Firefly, Fritz Griffioen, Bill Griffioen and Rod Mayhill cased harm upon thousands of customers in multiple states with the forced acts of boycott, coercion, or intimidation in their refusal to deal with segments of the public under fixed classifications.

40. Defendants ongoing activity directly affected and restrained interstate commerce in the historically underserved communities predominately comprised of African American and other minority ethnic citizens.

41. The supplier/agencies were threatened with the complete removal of insurance carrier access if they did not comply with the illegal and restrictive distribution rules of Defendants Firefly, Fritz Griffioen, Bill Griffioen and Rod Mayhill.

42. Defendants knowingly contracted the services of these supplier/agencies by means of a scheme intended to cause the supplier to believe that, if they did not perform such services, that person would suffer harm in violation of 18 U.S. Code § 1589 (a). See *Zelson v. Phoenix Mut. Life Ins. Co.,* 549 F.2d 62 (8th Cir. 1977) "Requiring agents to provide … services in a particular manner in order to continue selling and servicing its insurance policies may not be the business of insurance."

43. Defendants required supplier locations and supplier/agents within those locations to openly discriminate, violate business law, and illegally steer and/or boycott the auto and home insurance customers.

44. The practice involving home insurance is commonly known as redlining and violates the Fair Housing Act, business law, federal law and anti-trust law.

45. Defendants' practice is harmful to the clients who are usually unaware that they are victims. It is also harmful to the supplier or the producing agent in lost business opportunity and community reputation.

46. The Defendants' illegal steering occurs is in predominately underserved ethnic communities and is detrimental to the citizen searching for protection, in that inferior and/or higher priced insurance is offered or no coverage is offered at all.

47. It is at the supplier/agency level that long-term satisfied customer relations are of utmost importance, essential and the very reason an insurance agent is successful. A supplier/agent strives to become respected within the communities they serve and earn a trusted reputation from their customers. Thus, forced discrimination towards the very customers the supplier/agent depends upon causes both financial and professional harm.

## D (2). COLLABORATION of Anti-trust violations, Sherman & Clayton Act, Illegal Steering, Civil Rights and Fair Housing

48. Many victims fear retaliation, because they are still supplier/agencies with Defendant Firefly and because of the retaliation that has occurred against whistleblowers thus far, therefore they have provided affidavits solely to the FBI and/or DOJ with the desire to remain anonymous.

49. Plaintiff Mr. Fountain provides a few of the non-anonymous collaborating affidavits by attached exhibit A and has placed quoted excerpts below.

> November 30, 2018 *Collaborating Sworn Affidavit of William Turnbull on discrimination, State of Michigan*, Excerpt: "my agency has been notified by various communications by IHT to write insurance policies meeting certain criteria for most preferred carriers appointed with IHT. Examples of the criteria when issuing policies through most preferred carriers has appeared on IHT web pages, emails, and other forms of communication. The criteria, in part, consisted of writing auto insurance liability with a **limit no less than $100,000 per person and $300,000 per occurrence or greater** and with a certain carrier **home dwelling limit of $225,000 or greater and package business** auto and home both. These requirements by IHT if followed may discriminate against certain segments of our population."
> "I, William Turnbull submit this affidavit as a **whistleblower and victim** of IHT, Fritz Griffioen, Bill Griffioen and Rod Mayhill."
>
> October 27, 2018 *Collaborating Sworn Affidavit of John Mathers on discrimination, State of Michigan*, Excerpt: "My agency, doing business with IHT was required to comply with restrictive rules in the placing of Auto and Home Insurance business with a preferred insurance carrier. By way of example, the **minimum liability limits were required 100/300.**"
>
> October 31, 2017 *Collaborating Sworn Affidavit of Merrilee Stewart on discriminating, States of Indiana, Illinois, Michigan and Ohio*, Excerpt: "all RRL

members also became fully informed on many other regulatory violations, including: **Redlining, Role-On of Premium**, FLSA violations and many other illegal business practices called "At Risk" items brought to the attention of all members by our attorney Christopher B. Murphy." "The **housing discrimination (Insurance Redlining)** was still on-going. In addition, the extent of the embezzlement scheme on a large producing agency, such the Fountain Entities, was revealed through commission financial records and they were extensive."

October 17, 2018 *Collaborating Sworn Affidavit of Linda Resch on discrimination, States of Indiana, Illinois and Ohio,* Excerpt: "IHT called the customers that I assisted **low hanging fruit. Preferred carrier requirements** by IHT: no homes under $150,000, no mono line homes and no auto liability limits less than 100/300."

October 17, 2018 *Collaborating Sworn Affidavit of Michael W. Denys on discrimination, State of Michigan,* Excerpt: "Monday, October 15, 2018 I called IHT to ask about using Allstate/Encompass Insurance for Auto and Home customers in Michigan. This employee stated: "We are enforcing the **Affluent Middle-Class Rule** on all business written with Encompass". **Retaliation: Grange carrier access removal** was because of my placement of Home only, without the Autos, with Grange. **Unknown accounts identified** causing financial harm to me and my agency."

October 16, 2018 *Collaborating Sworn Affidavit of Maria Rondine Adrion on discrimination, States of Indiana, Illinois and Ohio,* Excerpt: "The customers that I assisted were considered as **low hanging fruit** by IHT and I was directed to offer business only through non-standard carriers on a separate rating system. I was **restricted in the placement of business** with IHT Insurance preferred auto and home insurance carriers. These restrictions include: no homes under $150,000, no mono line homes and no auto liability limits less than 100/300.

May 7, 2019 *Collaborating Sworn Affidavit of Wafeek Shalabi on discrimination, State of Illinois,* Excerpt: "My agency was required to abide by the placement rules enforced by IHT for access to the Preferred Auto and Home insurance caarriers. These placement rules discriminated against persons seeking insurance in the communities serviced by my agency. By way of example, in order to provide preferred carrier HOME coverage, we were required to also write AUTO at the same time. This rule was package only for the preferred carriers. Not all people in Chicago own a car, especially in the city and other customers may be better suited by habe their auto insurance with another insurance carrier.

January 28, 2019 *Collaborating Sworn Affidavit of John Bucher on discrimination, State of Illinois,* Excerpt: "required by IHT Insurance to comply with discriminatory and restrictive rules in providing Auto and Home Insurance to my customers and the community my agency services."

50. Defendants Fritz Griffioen and Bill Griffioen considered the customers in the underserved communities as low hanging fruit (trash).

51. Defendant Fritz Griffioen's email about the Hanover customer insuring a home without an auto

is quoted: "the home/no auto ones would seem to be **low-hanging fruit."** Attached as exhibit B.

52. Defendants Fritz Griffioen and Rod Mayhill put in place discriminatory, illegal, underwriting requirements for any business written with a preferred carrier.

53. Defendant Fritz Griffioen built the auto and home training website and individual carrier training and Defendant Rod Mayhill oversaw operations and became the enforcer of the rules.

54. Defendant Rod Mayhill also oversaw the employees who looked at the business coming through from the producing agents daily.

55. In the new agent orientation, it was Defendants Rod Mayhill and Fritz Griffioen who did the section on carrier appetites and risk placement.

56. Defendant Rod Mayhill told me he had emails from Encompass, Safeco and Hanover telling him he had to do these things to keep the appointment with the carrier, however, Plaintiff did not see the referenced emails.

**D (3). Mail fraud with the Roll-on of premium scheme**

57. Defendants Fritz Griffioen and Rod Mayhill insisted that no clients were written in a preferred carrier with less than 100,000/300,000 liability limits and furthermore instructed employees to change the liability limits on every policy that came through with lower limits, without the customers knowledge or permission, repeat without the customers knowledge or permission, and without the producing agent's knowledge or permission. These overbilling statements were then mailed to clients and their agents without foreknowledge and approval of the policy changes and overbilling.

58. Plaintiff Mr. Fountain attempted to stop this scheme to defraud our customers.

59. The Defendants' changes, resulted in over billings being mailed to each customer, and if not paid, would result in the cancellation of the customers' policy.

60. Aside from violation of insurance regulation in this "roll-on" of premium scheme, each

unauthorized bill that was mailed through the US Postal System and became "Mail Fraud".

## E (1). Embezzlement of over $8M and the thousands of counts of Mail Fraud

61. The totals of unpaid commissions are now documented at over 8,911 transactions with an estimated embezzlement of over $8M.

62. The stolen embezzlement of these commissions not only resulted in thousands of fraudulent commission statements and unpaid commissions; they resulted in thousands of held, discarded and undelivered mail.

63. Safeco Insurance is a carrier with a record of 1,220 "unknown" transactions and yet the proper producing agent is listed on every policy in the Safeco system. LizAnn Mayhill not only refused to look up, identify the proper agent to pay the required commission, she was a direct recipient of the benefits derived by the refusal to pay the commissions owed. This was in the form of increasing distributions of fictitious profits to her husband, Rod Mayhill, an owner in RRL (the company that wholly owned Firefly).

64. Plaintiff Mr. Fountain had many fights with Defendant Rod Mayhill about his wife not matching the proper producing agent to the policy.

65. By April 2013 all owners were confronted with the realization of the accumulation of "unknowns" (Commissions owed but not paid) when outside counsel attorney Christopher Murphy supplied the "active" and "in-force" listing showing 1,426 "unknowns" (Commissions owed but not paid) totaling over $1,274,347.00 in premium. This report was supplied in preparation for the sales of Speedy Auto Insurance to Plaintiff Mr. Fountain.

66. Plaintiff's spouse, Kathy, explained this in her affidavit attached as exhibit C and shown in part below:

> Affidavit of Kathy Fountain: "LizAnn Mayhill and her employee are the only ones who had access to commission tracker. I am familiar with the commission tracker system because I use the program for payment of commission in the Norman L. Fountain Insurance Agency.
> If the information did not exactly match, then no commissions were paid to the agent that wrote the policy and the policy commission became "Unknown". This meant "Unknown" and

effectively an "owed commission unpaid". This also meant that customer service issues and requests did not go to the agent.

LizAnn Mayhill and her employee were the only ones who had the access to run reports on commission tracker, so it wasn't until we were going to purchase the Non-Standard division (Speedy Auto dba: Client Choice and York) that we became aware of the extensive of the amount of active "Unknowns".

The active and in force listing IHT attorney Christopher Murphy sent out and attached to our purchase agreement (run date 4/30/2013) had 1,427 policies and a premium of $1,274,347.72."

67. The claim or explanation given by attorney Christopher Murphy at this time was that this was the producing agents fault because they had failed to let us know that the customer belonged to them. However, in most of the cases, this turned out to be false. LizAnn had simply failed to use the Agent Transaction System which would identify to her who the agent was for each customer.

68. By way of specific example are the commission payments received by Plaintiff on 4 customers in September 2015. Defendants employee, LizAnn Mayhill, only paid the current commissions without regard to the unpaid commissions due from the prior years that our customers had been with the same carrier through the Defendant.

69. However, the only payment made on the matched unknown was the current commission. Therefore, if it was for an auto policy renewing every 6 months that our agency wrote 5 years ago, we would be missing 10 commission payments.

70. When an unknown was matched to an agent LizAnn did not go back and pay the required accounts payable obligations. Defendants employee, LizAnn Mayhill, would pay the current commission. Thus, leaving a substantial amount of commissions money unpaid and owed. This was clearly purposeful and knowingly illegal, and clearly theft.

71. The unknown commissions owed should have been placed in a separate account, pending identification of the rightful owner of the money. However, this was never done. The funds were distributed to the owners as "Distributions". This was pure and simple theft of the commissions owed.

72. Plaintiff Mr. Fountain began going through records to work with non-party Merrilee Stewart to determine the extent of the accounts' payable obligations. Simultaneously more and more unpaid accounts belonging to Plaintiffs agency were discovered.

73. Part of these records revealed the unknowns going back to the beginning, in 2005. LizAnn would put an "??" beside the commission entry instead of the producing agents name. Then again, she also never bothered to look in the agent transaction system or on the actual policy to see who the correct agent was.

74. Email from LizAnn, RE: Safeco September 6, 2007: Attached as Exhibit D.

> "Usually, I will send out one or two emails asking who wrote something. After that I mark it on my form with ?? and leave it sit until someone claims it. On the commission statements I have no idea what state the customer lives in. If I get mail in with the address, I can let you know those."

75. LizAnn references her form marked with "??" to designate unknowns. LizAnn's form is the All Written excel spreadsheet that she prepared and distributed monthly from 2005 to 2011. This spreadsheet was used by the employees who handled the mail and electronic communications that needed to be sent to the producing agents.

76. Most importantly, the commissions owed to our producer agents were never paid out to them and were not held in a separate account pending identification. These commissions were distributed to the owners, who were fully aware of this being the transfer of money that belonged to producing agents, thus stealing the money instead of holding the funds to be paid to rightful owner.

77. This was the fraudulent scheme to steal money, rationalize the theft and it worked.

## E (2). COLLABORATION of the Embezzlement of Millions and the thousands upon thousands counts of Mail Fraud

78. Again, many of the victims' fear retaliation, because they are still supplier/agencies with Defendant Firefly and therefore have provided affidavits solely to the FBI and/or DOJ with the desire to remain anonymous.

79. Plaintiff Mr. Fountain provides a few of the collaborating affidavits by attached exhibit E and has placed quoted excerpts below.

> 1) November 30, 2018 *Collaborating Sworn Affidavit of William Turnbull on embezzlement, State of Michigan*: "There where insurance policies written through IHT that had been classified as "unknowns." Policies classified as "unknowns" were policies issued through IHT by producers that did not match. This unknown

classification resulted in some unpaid commissions to writing producers. As the Michigan Business Coordinator contracted by IHT to help develop Michigan I received an overwrite commission of policies issued through IHT from other Michigan agencies/Producers that I helped develop, train and offer assistance to. As a result of IHT classifying certain policies as "unknowns" this has caused financial harm to me as a producer and Michigan Business Coordinator, my agency producers, and other Michigan producers."

2) October 17, 2018 *Collaborating Sworn Affidavit of Michael W. Denys on embezzlement, State of Michigan*: Unknown accounts identified causing financial harm to me and my agency. The unknown accounts identified to date, resulting in unpaid commissions to me over the last 10 years of over $27,000, has also caused financial harm to me and my agency. I suspect there are additional commissions owed to me.

4) October 31, 2018 *Collaborating Sworn Affidavit of Ted Lewicki on embezzlement, State of Michigan*: "The unknown accounts identified as my customers, resulting in unpaid commissions has caused financial harm to me and my agency."

5) October 2, 2018 *Collaborating Sworn Affidavit of Norman L. Fountain on embezzlement, States of Indiana, Illinois, Kentucky and Ohio*: "I am a victim of financial and professional harm by IHT Insurance, Fritz Griffioen, Bill Griffioen, Rod Mayhill and their attorney. I also enjoin with Merrilee Stewart as an additional informant and whistleblower with all investigations and court action.
I began going through records to work with Merrilee Stewart to determine the extent of the accounts payable obligations. Simultaneously we discovered more and more unpaid accounts belonging to my agency.
Part of these records revealed the unknowns going back to the beginning, in 2005. LizAnn would put an "??" beside the commission entry instead of the producing agents name. Then again, she also never bothered to look in the agent transaction system or on the actual policy to see who the correct agent was.

> Email from LizAnn, RE: Safeco September 6, 2007: "Usually, I will send out one or two emails asking who wrote something. After that I mark it on my form with ?? and leave it sit until someone claims it. On the commission statements I have no idea what state the customer lives in. If I get mail in with the address, I can let you know those."

LizAnn references her form marked with"??" to designate unknowns. LizAnn's form is the All Written excel spreadsheet that she prepared and distributed monthly from 2005 to 2011. This spreadsheet was used by the employees who handled the mail and electronic communications that needed to be sent to the producing agents.

6) On *Collaborating Sworn Affidavit of Dan Jones on embezzlement, State of Michigan*: "I wrote Auto and Home insurance through carriers appointed with IHT Insurance in the State of Michigan. There are unknown accounts identified as my customers. I wish to enjoin as an additional counterclaim plaintiff in U.S. District Court."

7) On *Collaborating Sworn Affidavit of Vicky Russo on embezzlement, State of Ohio*: "There are unknown accounts identified as my customers, resulting in unpaid commissions."

8) On *Collaborating Sworn Affidavit of John Bucher on embezzlement, State of Illinois*: "I was a supplier/agency for IHT Insurance in the State of Illinois, There are unknown accounts identified as my customers, resulting in unpaid commission that have caused financial harm to me and my agency."

9) On *Collaborating Sworn Affidavit of David Akers on embezzlement, State of Indiana*: "I am an agent with IHT. I have customers that IHT placed on an unkn0own listing that are identified as belonging in my agency. I believe I am owed commissions on these customers."

10) On *Collaborating Sworn Affidavit of Wafeek Shalabi on embezzlement, State of Illinois*: "I operated as Midwest Insurance under appointed authority of IHT Insurance beginning in August 2012. My agency has business that was placed on an unknown listing and an orphan listing by IHT. My commission statements should have included this business and I should have received all the associated mail correspondences on my customers."

## F. Obstruction of Justice

80. On August 9, 2016 Defendant Fritz Griffioen's sworn affidavit [4], now proven to be false, was uploaded to the Franklin County Courts to obstruct justice, stop an insurance investigation, stop a police investigation and seek sanctions in violation of whistleblower laws that serve to protect a citizen who duly reports criminal activity.

81. This false affidavit was used by Defendant James R. Carnes in the Franklin County Courts to discredit and sanction Non-party Merrilee Stewart for:

> "Filing the police report, Filing Insurance claims on the documented, provable embezzlement of millions of dollars in agent/agency commissions, and reporting the discrimination to the Ohio Civil Rights Complaint."

82. Please note, located on the bottom of the false affidavit is the document number of Shoemaker Loop & Kendrick, LLP, which substantiates the preparation of the affidavit by Defendant James Carnes, Esq.

---

[4] Fritz Griffioen's perjured affidavit submitted to Franklin County Courts on August 9, 2016, the Columbus Police Department and the Hartford Insurance company is attached hereto as exhibit F.

83. The perjured affidavit Notarized on August 9, 2016 and uploaded to Franklin County Courts on

August 10, 2016 is quoted, in part below:

> QUOTE: "1. My name is Fritz Griffioen. I am a part owner of RRL Holding
> Company of Ohio, LLC ("RRL") and IHT Insurance Agency Group, LLC ("IHT') and
> Vice President of IHT. I make this affidavit based on personal knowledge.
>
> 2. I directed an employee of IHT to request correspondence from The Hartford
> Financial Services Group, Inc. ("Hartford") relating to an insurance claim made on
> behalf of IHT. Attached as Appendices 1, 2, 3, and 4, are emails from Merilee Stewart
> to Hartford dated July 19, July 20, July 25, and July 28, 2016. Hartford provided these
> emails to IHT in response to IHT's request.
>
> 3.Attached as Appendix 5-is a summary for claim 105599470, -filed on behalf of IHT
> with Liberty Mutual Insurance.
>
> 5.The allegations of employee dishonesty made in the insurance claims described in
> paragraphs 2 and 3 are totally false." END QUOTE

84. Plaintiff Mr. Fountain submitted a separate report to Detective Chris Bond of the Columbus

Police about his personal knowledge of and as a victim of the now known, documented and

provable embezzlement scheme.

85. The police investigation was further interfered with by a false police report made by the

Defendants attempting to discredit the reporter of the original police report made by Non-party

Merrilee Stewart involving Firefly.

86. The insurance company claims, that Defendant Fritz Griffioen described as "totally false",

include the description of the "Unknowns, i.e., undistributed agent / agency commissions", that

were and continue to be, distributed to owners (Defendants Fritz Griffioen, Bill Griffioen and

Rod Mayhill) in monthly distributions, when it was well known, discussed, reviewed and

identified, as funds not belonging to the owners.

87. These funds were, and continue to be, funds (commissions) that had not been properly identified

for a particular agent / agency, that should have been sequestered in a separate account until the

proper owner was identified and paid. This was in fact the suggestion of outside counsel,

Christopher Murphy, to preserve these funds until properly dispersed. Christopher Murphy

identified these as a Corporate "At-Risk" situation that required corrective action. Any distribution of these funds to anyone other than the rightful owners was, and is theft, now on a grand scale.

88. The purposeful distribution of these funds to the Owners in the form of monthly profit distributions, resulted in the embezzlement of over $8 million. These were funds out of unrecorded accounts payable obligations, distributed to the owners in fraudulent profit distributions. The claim information submitted to Hartford Insurance [5] is attached as exhibit G. Again, Defendant Fritz Griffioens' affidavit alleges this to be totally false.

89. Subsequently on October 5th and 6th, and November 3rd, 2017, in front of a three judge Arbitration panel, Defendants Fritz Griffioen, Firefly and attorney, James Carnes, admitted to the "Unknowns, i.e., undistributed agent / agency commissions" and concerns about the unknowns.

> QUOTE: "The meeting among RRL members was eventually postponed until December 11, 2014. At this meeting, Ms. Stewart discussed the topic of "unknowns," i.e. commissions that the Company has not paid because it has been unable to match the commission with the agent who was entitled to it. Ms. Stewart believed the unknown commission problem created significant potential liability for the companies (both IHT, and indirectly RRL) and asserted that the other members were trying to cover up the problem." (page 4¶3)

> "all members of IHT's Board were concerned about the unknown commission issue, not just Ms. Stewart." (page 9¶4)
> "the meeting minutes for April 9, 2013 show a discussion of the unknown commissions issue and how IHT planned to handle it. Ms. Stewart signed the minutes. Additional discussion of the unknown commissions issue appeared in Board minutes from April 8, 2014 and August 26, 2014." (page 10¶1) END QUOTE [6] Attached as exhibit H.

90. Fritz Griffioens' affidavit remarks that the "Unknowns and employee dishonesty" being totally false directly contradicts the very meeting minutes discussing the unknowns, signed and prepared by Fritz Griffioen, that he presented to the three-judge arbitration panel.

---

[5] The insurance company correspondence that Fritz Griffioen claims are totally false and contradicts this very testimony in Arbitration in attached hereto as Exhibit G.

[6] The Final Arbitration Award with documentation of the unknowns and the concerns about the unknowns is Attached as exhibit H. (page 4¶3) (page 9¶4) (page 10¶1)

91. This is also directly contradicted by Fritz Griffions' communication on May 2, 2013 to LizAnn Mayhill [7] about the unknowns involving his own agency and his concern about IHT/Firefly's ability to pay.

> QUOTE: "My own office has also reviewed the unknown list. They tell me that exactly 100 policies on that list, that are ours. Even before seeing this email, I was concerned about IHT's ability to pay out commissions" END QUOTE

92. Furthermore, James R. Carnes, Esq. has yet to make a correction of the perjured affidavit with the Franklin County Courts. This is subordination of perjury.

93. So, the question is: Did Defendants Fritz Griffioen, Firefly and their attorney James Carnes lie to the Franklin County Courts, to Hartford Insurance and Liberty Mutual Insurance, or did they lie to the three judge Arbitration Panel, and on the signed meeting minutes? Which one is the lie? What is true in one cannot be true in the other. And we now know, documented and provable, that they lied to the Franklin County Courts, to Hartford Insurance and Liberty Mutual Insurance.

94. To further interfere with investigations Defendants Firefly Agency filed a knowingly false police report alleging non-party Merrilee Stewart had stolen money on August 10, 2015, complaint No. 150713998. Notwithstanding this, the false police report was made after Defendant Firefly had argued in Franklin County Courts that claims between non-party Merrilee Stewart and Defendant Firefly Agency belonged in Arbitration on July 20, 2015. [8] Attached as exhibit J.

95. Plaintiff Mr. Fountain can certify that the three-judge Arbitration panel confirmed that Non-party Merrilee Stewart was not a thief. On December 8, 2017 the three Judge Arbitration Panel confirmed Merrilee Stewart did not steal any money, quoted here: [9] Attached as exhibit K.

---

[7] Fritz Griffioens' communication to LizAnn Mayhill regarding the unknowns identified in his agency is attached hereto as exhibit I.

[8] Defendant Fireflys' motion to compel arbitration of July 20, 2015 in attached as exhibit J.

[9] Id. page 9 ¶3 of the attached exhibit K.

QUOTE: "Claimant also contends that Ms. Stewart stole $19,009.44 from IHT's accounts between December 30, 2014 and March 30, 2015, the closing date for the sale of Ms. Stewart's RRL membership units.

"Claimants did not support this claim with evidence. Ms. Stewart believed that she was still a member of RRL until, at least, the closing date of March 30, 2015, and Claimant failed to cite to a contractual provision or produce evidence to the contrary. Until the closing occurred, no transfer of membership interests could be, or had been, effected. Further, all other departing members continued to receive their distributions following their (voluntary) withdrawals until the closing dates."

"Also, Claimant had not removed her as a signatory on the IHT bank account. The panel thus finds that Ms. Stewart did not "steal" this money and, therefore, is not obligated to return it." END QUOTE (page 9 ¶3)"

96. The affidavit, by Defendant Fritz Griffioen, stating the "Unknowns were totally false" is documented and proven to be a false statement and Fritz Griffioen knew his affidavit was false when he signed it. The disparagement of Whistleblower Merrilee Stewart, attempting to call her a thief is also now proven to be false. However, this affidavit and the interference it caused with the investigation clearly obstructed justice and concealed the theft of millions of dollars of commissions owed by Defendants.

97. As for Defendant James Carnes, Esq. of Shumaker, Loop & Kendrick his preparation and utilization of the false affidavit is clearly subordination of perjury and obstruction of justice.

## G (1). Witness Intimidation

98. Plaintiff Mr. Fountain was also the primary witness in non-party Merrilee Stewart's charge of retaliation for the protected activity of reporting insurance redlining and discrimination. Ohio Civil Rights investigator Melody Smith, working with Defendant Jamie Carnes of Shumaker, Loop & Kendrick, attempted to teleconference Jamie Carnes into the conversation when Plaintiff Mr. Fountain was scheduled to give his testimony on a scheduled conference.

99. Defendants Fritz Griffioen and Bill Griffioen, with their attorney, Defendant James Carnes of Shumaker, Loop & Kendrick, along with Melody Smith of Ohio Civil Right Department, attempted to intimidate Plaintiff Mr. Fountain. The attempted inclusion of Defendant Jamie Carnes, into our conference call was a total surprise. Clearly this "attempted witness

intimidation" did not work on me. It was clearly done by James Carnes. Weeks passed and I was called by Ms. Smith and her supervisor at the Ohio Civil Rights Commission. At that time, I discussed James Carnes and how he was involved. However, her supervisor only wanted my information on several questions that both of them already had; and refused to discuss Ms. Smith's personal involvement with attorney James Carnes.

### G (2). COLLABORATION of Witness Intimidation

100. Other collaborating victims of witness intimidation from Defendant James Carnes, Esq. include the following quoted affidavits attached hereto as exhibit L:

> Affidavit of John Mathers 1: "I have unpaid commission owed to me by IHT Insurance. I signed for representation from for attorney Matthew T. Anderson to represent my interests. As of this date, I have received no communication from Mr. Anderson on the status of my request for payment of my commissions. **I also received a harassing phone call from James R. Carnes of Shumaker, Loop & Kendrick.**" (Aff. of victim 1, Oakland County, Michigan Oct.30, 2017)

> Affidavit of Kevin Becker 2: "I have unpaid commission owed to me by IHT Insurance. I signed for representation from for attorney Matthew T. Anderson to represent my interests. As of this date, I have received no communication from Mr. Anderson on the status of my request for payment of my commissions. **I did receive a harassing letter from attorney James R. Carnes.**" (Aff. of victim 2, Spartenburg, South Carolina, Nov. 1, 2017)

### H. Retaliation

101. Today, there are now over 35 informants who have provided sworn affidavits that collaborate the embezzlement of commission funds, the restraint of trade, insurance redlining and Fair Housing Act violations.

102. Plaintiffs agency, Norman L. Fountain Ins. & Assoc., has numerous accounts appearing on the "Unknowns" list produced by LizAnn Mayhill, which confirms his status as a victim of this embezzlement scheme.

103. When Plaintiff Mr. Fountain requested payment on "Unknowns", he was immediately retaliated against. Defendant Fritz Griffioen had carrier access to service his customers in IHT shut off at the moment the Federal Express envelope with his termination was signed for. There

were customers who required service and Plaintiff could not help them as all access was shut off to service our insurance customers through any of the insurance carriers with IHT.

104.    The cover-up, concealment and avoidance of restitution was with Defendants Fritz Griffioen and Bill Griffioen and involved their attorney. Defendants had successfully seized majority control of the company and placed three additional family members on the payroll.

105.    When Plaintiff, as a victim of the unknown embezzlement scheme, requested the payment for additional identified accounts, the retaliatory response came from the personal attorney of Defendants Fritz Griffioen and Bill Griffioen of Shumaker, Loop & Kendrick, which cancelled all access to the carriers insuring his customers. Plaintiff and the customers he served was harmed as a result of this action.

**I. Defendant James Carnes, Esq.**

106.    To further illustrate the cover-up, concealment and avoidance of restitution by Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill, in September 2015 they fired Firefly attorney Chris Murphy. Then Defendants Fritz Griffioen and Bill Griffioen placed their personal attorney in charge, Defendant James Carnes, Esq. of Shumaker, Loop & Kendrick.

107.    Prior to September 2015, Chris Murphy, Esq. had served as counsel for Defendant Firefly (from 2011). Attorney Murphy had presented the "Unknowns" as an at-risk item to the company in 2013 and advised the board to establish a separate account for all commissions associated with an "Unknown" instead of just taking and spending the money that is a known obligation of the company.

108.    These were "Known Obligations" of the company, that were not reported on any accounts, thus falsifying all accounts reporting, to include federal, state and local taxes.

109.    The former Firefly corporate attorney Christopher B. Murphy "claimed" to have put this procedure in place in his written correspondence to non-party Merrilee Stewart's counsel on July 6, 2015. [10] Attached as exhibit M.

>   "If a policy still has not been paired with an agent [..] it will be coded as "unassigned" and the commissions paid by the carrier for the policy will be moved and held in a separate financial account for unassigned commissions. (LizAnn and Tania)"

110.    The financial officer, Defendant Fritz Griffioen and his father Defendant Bill Griffioen and Defendant Rod Mayhill, simply got rid of Chris Murphy, Esq. and replaced him with their personal attorney, James R Carnes, Esq. Therefore, this ensured that they could continue to actively move as much money out of the IHT as possible to their family members in the form of Fraudulent "Profit Distributions". This also ensured that there is no money available for restitution of the documented victims of embezzlement who will likely enjoin in the U.S. District Court lawsuit.

111.    The Griffioen Agency controls the operations of the Firefly. Upon belief, they recently added two family members as owners. So today, you have: Bill Griffioen (the father), Fritz Griffioen (son), Hans Griffioen (son), Andy Kirkham (son-in-law), and Rod Mayhill controlling the entity.

112.    Thus, the Griffioen family is continuing the fraudulent monthly profit distributions.

113.    These fraudulent month profit distributions are similar to the well documented New York State lawsuit against the Purdue's Slacker Family, detailed in the Wall Street Journal, U.S. News section, on March 29, 2019. Quoted, in part, below:

>   "The lawsuit claims the Slackers regularly voted to pay their family hundreds of millions of dollars a year. The suit says the transfers are fraudulent because the family knew Purdue was insolvent yet continued to distribute funds from the company to the family members. The profit distributions left Purdue with unreasonably small capital to pay off its certain creditors in the opioids litigation, including plaintiff New York State,"

---

[10] Firefly commission procedure submitted by Chris Murphy on July 6, 2015 is attached as exhibit M.

114.   This is exactly, repeat exactly, what is occurring now with the Firefly Agency. They know they have millions of dollars in commissions owed to agents and agencies, but continue to distribute funds to family members, regardless of the known and anticipated obligations.

**J. Mail Theft**

115.   Defendant Fritz Griffioen, in putting together the auto and home training, completed a training booklet on the agent's transaction form ("ATF") used to report business by the supplier/agencies. This was also part of the orientation for each new producing agent.

116.   Defendants' instructions included: "Remember, the only way you'll get underwriting notices (and commissions) is to complete the ATF."

117.   The reality is that even when the agents did the ATF, Firefly's employee LizAnn Mayhill still put many of the policies on the "Unknown" listings. In addition to the unpaid commissions, there was the unreceived mail and electronic communications that was prevented from going to the intended recipient, either the agent or the customer, because of her action listing them as "Unknowns".

118.   This included policies and important insurance documents belonging to the customers and or the producing agent. With the "Unknowns" now into the thousands, the amount of communications withheld from delivery is substantial. Most concerning is the important safety inspections completed on homes and businesses. As an example, Hanover Insurance had done an inspection of every home in Michigan. The resulting reports indicate hazards that may cause injury to the public or damage to the property and the requirement to correct.

119.   Other important correspondences that, left undelivered, would cause harm if not answered, resulting in the cancellation of the customer's policy.

**K. Under Reported Income on Tax Returns**

120.   On 2011 and 2012 tax returns former owner Glenn Roulette's buy/out payments were placed under expenses. This was per the CPA Cliff Nash, followed by CPA Donna Andriot.

121. After Plaintiffs removal in 2013, his access to the Firefly CPA Donna Andriot was prohibited by Defendant Fritz Griffioen. Donna Andriot made amendments on the 2013 and 2014 returns to correct underreported income, however, did not correct 2011 and 2012.

122. Defendant Fritz Griffioen refused to allow any communication from myself or my CPA on the matter and subsequently fired Donna Andriot.

123. 2011 and 2012 returns have underreported income. Defendant Fritz Griffioen knows about this and refuses to correct.

**L. Theft of money, unjust enrichment and conversion by Defendants Fritz Griffioen, Bill Griffioen and Non-Party The Griffioen Agency**

124. In 2012 Defendants Fritz Griffioen and Bill Griffioen placed three family members on the payroll of Defendant Firefly.

125. Simultaneously, Defendants Fritz Griffioen and Bill Griffioen continued to direct these family members to work in the Griffioen Agency while being paid by Firefly.

126. Defendants did not pay Firefly for the use of their employees.

127. Subsequently Plaintiff Mr. Fountain discovered these family members, while being compensated as employees of Defendant Firefly, were also writing business on behalf of the Griffioen Agency and Defendants Fritz Griffioen and Bill Griffioen were paying themselves owner level commissions on this business.

128. Defendants did not pay Firefly for the commissions of Firefly employees misappropriated to the said Defendants' benefit.

129. Defendants Fritz Griffioen and Bill Griffioen were improperly stealing money from Firefly through this scheme of unjust enrichment.

130. This theft money belonging to Firefly caused harm to the profits and the owners, including Plaintiff Mr. Fountain.

**IV. Cause of Action**

## COUNT ONE: ANTI-TRUST AND FAIR HOUSING ACT VIOLATIONS

131.    Plaintiff Mr. Fountain incorporates the allegations of the preceding paragraphs as if rewritten herein.

132.    Mr. Fountain was injured in his business by reason Defendants violations of Federal Antitrust Laws, the Civil Rights Act and Fair Housing Act.

133.    Based upon the facts and circumstances described more fully above, Defendants Firefly, Fritz Griffioen, Bill Griffioen and Rod Mayhill have violated anti-trust law including but not limited to the Sherman Act 15 U.S.C. §§ 1-7, The Clayton Act 15 U.S.C. § 12-27 and Federal Communications Act.

134.    Defendants Violations of Clayton Act, Sherman Act and Federal Communication Act with forcing the suppliers, the contracted agents and agencies, to boycott segments of our citizens from access to insurance products and services.

135.    These forced acts of boycotting, occurring in multiple states, not only harming the suppliers financially but tarnishing their reputations within the communities they service.

136.    The supplier is forced to comply or suffer loss of all product access, essentially causing harm to all customers and putting the supplier out of business.

137.    In most cases the customer is an unknowing victim. To further harm the supplier, they are required to illegally steer customers to products that are more costly or inferior based upon discriminatory criteria in violation of the Civil Rights Act and the Fair Housing Act.

138.    The private antitrust action was created in 1890 as part of the Sherman Antitrust Act. Section 4 of the Clayton Act provides simply:

> "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee"

139.   In addition, Defendants Firefly, Fritz Griffioen, Bill Griffioen and Rod Mayhill have violated The Fair Housing Act.

140.   These violations have caused harm to thousands of unknowing consumer victims and the supplier/agents, including Plaintiff Mr. Fountain.

141.   With their actions, followed by the ensuing cover-up and concealment Plaintiff Mr. Fountain has suffered damages.

142.   Plaintiff seeks damages as are provided through this private antitrust action and/or as are available under The Fair Housing Act.

## COUNT TWO: MISPRISION OF MULTIPLE FELONIES

143.   Plaintiff Mr. Fountain incorporates the allegations of the preceding paragraphs as if rewritten herein.

144.   Defendants Firefly, Fritz Griffioen, Bill Griffioen, Rod Mayhill and James Carnes have participated in or have direct knowledge of multiple felonies causing harm to consumers, employees, supplier/agencies and Plaintiff Mr. Fountain.

145.   As described more fully in the allegations and facts, Defendants are involved with multiple violations of 18 U.S.C. § 4 (1976) Misprision of a Felony:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

146.   Defendants' full knowledge about the felonies, failed to notify law enforcement authorities and took multiple affirmative acts to conceal these felonies.

147.   Concealment included making false statements and hiding evidence.

148.   Cover-up included retaliation and discrediting the informant, Plaintiff Mr. Fountain.

149.   Mr. Fountain individually and as a supplier/agency suffered damage because of the felonies perpetrated upon himself and his business.

150. Mr. Fountain suffered damages from the cover-up and concealment.

## COUNT THREE: ASSESSORY AFTER THE FACT

151. Plaintiff Mr. Fountain incorporates the allegations of the preceding paragraphs as if rewritten herein.

152. Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill individually and in their control of Firefly in a concert of action have taken multiple steps to hinder or prevent punishment for the known offenses committed against the United States.

153. These offenses committed against the United States include, but are not limited to, federal agencies of the United States Postal Service and The Internal Revenue Service.

154. Counterclaim Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill have violated 18 U.S. Code § 3

> "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact."

155. Plaintiff Mr. Fountain has suffered injury personally, in business and with his property rights because of as the result of offenses committed by Fritz Griffioen, Bill Griffioen and Rod Mayhill.

## COUNT FOUR: CIVIL ACTION FOR TITLE 18 CRIMES

156. Plaintiff Mr. Fountain incorporates the allegations of the preceding paragraphs as if rewritten herein.

157. Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill have participated as a principal enterprise which is engaged in activities of which affect interstate commerce.

158. Counterclaim Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill individually and in their control of IHT/Firefly have violated multiple prohibited activities under sections of 18 U.S. Code § 1962.

159. Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill as a principle enterprise have received income derived from a pattern of title 18 crimes. Sometimes referred to as racketeering

activity in violation of 18 U.S. Code § 1962 (a).

160.   Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill as a principle enterprise violated 18 U.S. Code § 1957 with the documented 8,911 unknown transactions resulting in unpaid commissions of approximately eight million dollars ($8,000,000) and with the theft of these accounts payable obligations placed into their pockets.

161.   Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill as a principle enterprise violated 18 U.S. Code § 2511, 18 U.S. Code § 2515, 18 U.S. Code § 1701 and 18 U.S. Code § 1702 with the unknown transactions resulting in held, discarded and undelivered mail and electronic communications with thousands of important insurance documents and communications withheld (and in many cases destroyed) from the client and the agent.   These communications sometimes involved important life safety issues with insurance inspections uncovering public safety hazards, recommendations, required corrective action, and if left without correction, could result in cancellation or harm to the public.

162.   Plaintiff Mr. Fountain has been injured in his business and property by reason of a violations of title 18 section 1962 crimes perpetrated by Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill.

163.   Plaintiff seeks civil remedies as are authorized by 18 U.S. Code § 1964 including threefold damages.

## COUNT FIVE: MAIL FRAUD - PREDICATE TITLE 18 CRIME

164.   Plaintiff Mr. Fountain incorporates the allegations of the preceding paragraphs as if rewritten herein.

165.   As described more fully in the aforementioned allegations and facts Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill have participated as a principal enterprise engaging in multiple counts of Mail Fraud in violation of 18 U.S. Code Chapter 63.

166. Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill have participated as a principal enterprise in using the U.S. Mail in the furtherance of the criminal act of Mail fraud in violation of 18 U.S.C. 1341.

167. The scheme to defraud involved making changes on the customers purchases without authorization or authority, causing fraudulent overbilling to be sent through the U.S. Mail. This scheme involved material misstatements that resulted in the customers' loss of money, honest services and some in cases cancellation of the original authorized purchase.

168. The documented 106 counts of Mail Fraud Scheme were perpetrated upon customers residing in Ohio, Michigan, Tennessee, Indiana and Pennsylvania. Ohio victims totaled 57.

169. In furtherance of Mail Fraud was the mailing of Partnership Returns through the U.S. Mail with underreported income for multiple years by Fritz Griffioen in a scheme to defraud The United States government, Internal Revenue Service, out of money owed.

170. In furtherance of Mail Fraud, thousands of fraudulent commission statements sent monthly beginning in 2005, is ongoing.

171. The Tax Evasion scheme was also known by Defendants Bill Griffioen and Rod Mayhill in violation of 18 U.S. Code § 1962 (c) unlawful association and 18 U.S. Code § 1962 (d) conspire to violate.

172. Upon belief Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill all participated as a principal enterprise in violation of the general conspiracy statute, 18 U.S.C. § 371, which creates an offense if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose.

## COUNT SIX: RETALIATION, DISCRIMINATION and INTRUSION (false light)

173. Plaintiff Mr. Fountain incorporates the allegations of the preceding paragraphs as if rewritten herein.

174.    Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill individually and in their control of Firefly have violated Mr. Fountain's federally protected rights as a whistleblower in violation of federal law.

175.    Plaintiff Mr. Fountain has federal protections as a person reporting corporate fraud and is entitled to protection under Section 806 of the federal Sarbanes-Oxley Act and/or the Dodd-Frank Act.

176.    Sarbanes- Oxley Act of 2002 made it illegal for anyone to retaliate against a whistleblower and the extended protection of Dodd-Frank to any individual claiming to have been threatened, harassed or subjected to discrimination because of conduct protected by the Dodd-Frank Act.

177.    The Dodd-Frank Wall Street Reform and Consumer Protection Act created a private right of action that gives whistleblowers the right to file a complaint in federal court.

178.    Plaintiff Mr. Fountain engaged in the protected activity of reporting. Afterwards, adverse action was taken against him and the adverse action and the protected conduct are connected.

179.    Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill have engaged in multiple adverse actions against Mr. Fountain as a result of his reporting.

180.    The United States Supreme Court ruled that the prohibition against "discrimination" in certain federal laws includes a prohibition against "discriminating against people who complain of unlawful discrimination.

181.    Upon belief, Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill also violated the Victim and Witness Protection Act of 1983, 18 U.S.C. § 1514 with their course of conduct directed at Ms. Stewart to harass, cause substantial emotional distress and which served no legitimate purpose. See *United States v. Tison*, 780 F.2d 1569 (11th Cir. 1986).

182.    Mr. Fountain believes the actions of Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill and their attorney violates Federal Laws against Discrimination and retaliation.

183. Civil Rights Act of 1871, a person who deprives the federal right of another person, while acting under color of state law, custom, or usage, can be sued for intrusion. A "person" under this act means natural persons.

184. As a result, Plaintiff Mr. Fountain has suffered damages.

## COUNT SEVEN: SIMILARLY SITUATED, EQUAL PROTECTION, DESPARATE TREATMENT and THE FOURTENTH ADMENDENT

185. Plaintiff incorporates the allegations of the preceding paragraphs as if rewritten herein.

186. Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill individually and in their control of Firefly conspired to deprive the Mr. Fountain of his constitutional rights.

187. Plaintiff Mr. Fountain is entitled to equal protection of the laws under the fourteenth amendment.

188. Mr. Fountain brings the claim under 42 U.S.C. § 1985 (3).

189. As described more fully in the aforementioned allegations and facts, Defendants Fritz Griffioen, Bill Griffioen and Rod Mayhill have participated in multiple acts that were in direct violation of Mr. Fountain's constitutionally protected rights and opposite of those similarly situated individuals.

190. Mr. Fountain has suffered because of the acts of disparate treatment inflicted upon him.

191. Mr. Fountain seeks all remedies as are available under the federal law as remedy.

## COUNT EIGHT: Breach of Contract and Breach of covenant of Good Faith and Fair Dealing

192. Plaintiff Mr. Fountain incorporates the allegations of the preceding paragraphs as if rewritten herein.

193. Defendants owned a duty to Plaintiff as a supplier / agency, a partially redeemed owner and a purchaser of a former division of Firefly.

194. As described more fully in the aforementioned allegations and facts, Defendants have breached the covenant of Good Faith and Fair Dealing.

195. Further, Defendants have violated contract obligations.

196. As a result Plaintiff Mr. Fountain has suffered damages.

**V. Relief**

Plaintiff Norman L. Fountain, as a whistleblower, informant and a victim, hereby provides this claim and substantiating documents against Defendants Firefly, Fritz Griffioen, Bill Griffioen, Rod Mayhill and James R Carnes.

Plaintiff Norman L. Fountain respectfully submits this claim and testimony as to the ongoing cover up and continuation of White-Collar Crimes at the hands of Defendants Firefly, Fritz Griffioen, Bill Griffioen and Rod Mayhill, along with the aiding and abetting by their attorney Defendant James Carnes which has caused harm to Plaintiff Norman L. Fountain, former and current supplier/agencies and our citizens in Ohio and neighboring states.

**VI. Certification and closing**

Under Federal Rules of Civil Procedure 11, by signing below, Plaintiff Norman L. Fountain certifies to the court, to the best of his knowledge, information and belief that this complaint:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Rule 11.

I will provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

### JURY DEMAND

Norman L. Fountain, Pro Se Plaintiff hereby requests a trial by jury on the above Claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Norman L. Fountain demands judgment in his favor and against Defendants jointly and severally, as follows:

A. Compensatory damages, to be determined at trial, in an amount in excess of $8,000,000.00;

B. Punitive damages, where applicable;

C. Pre-judgment and post-judgment interest;

E. Declaratory, equitable, and injunctive relief;

F. Costs of this action; and

G. Any such other and further relief, whether at law or in equity, that this Court determines to be proper.

Respectfully Submitted,

/s/ Norman L. Fountain

Norman L. Fountian, *Pro Se*
3655 Miller Paul Road
Galena, Oh 43021
Phone: (614) 561-3922
Fax: (740) 965-4437
E-mail: IHTDemand@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July 2019, the Clerk of Court has signed form United States District Court Form AO 440 (Rev. 06/12) Summons in a Civil Action and Plaintiff has hired a server to perfect the service to each of the Defendants in this case.

Pursuant to the United States District Court Guide to Pro Se Litigants page 10 service will occur by "personal service." The summons and complaint will be hand-delivered to the Defendants by another person at least 18 years of age and not a Plaintiff or Defendant in the case.

Subsequently, the "Proof of Service." Will be filed with the courts.

Fritz Griffioen
25702 Wood Creek Rd.
Perrysburg, OH 43551

Bill Griffioen
755 Oxborough Dr.
Perrysburg, OH 43551

Rod Mayhill
5266 Sky Trail Drive
Hilliard, Ohio 43026

James R. Carnes, Esq.
1000 Jackson Street
Toledo, OH 43604

Respectfully Submitted,

/s/ Norman L. Fountain

Norman L. Fountian, *Pro Se*
3655 Miller Paul Road
Galena, Oh 43021
Phone: (614) 561-3922
Fax: (740) 965-4437
E-mail: IHTDemand@gmail.com